## Wytheville.

## WASHINGTON SOUTHERN RAILWAY COMPANY V. COMMON-WEALTH.

### June 8, 1911.

1. INTERSTATE COMMERCE—*Railroads—Fixing Local Passenger Rates.*—An interstate passenger rate fixed by the State Corporation Commission which is less than was charged by a railroad company when unrestrained for both interstate and intrastate passengers cannot be said to amount to or operate as a regulation of, or substantial burden upon interstate commerce.

2. RAILROADS—*Passenger Rates—Rulings of State Corporation Commission—Case at Bar.*—Where a railroad is built, maintained and operated essentially for interstate purposes, and the intrastate business is merely incidental—only about five *per cent* of its total business—and is so inconsiderable and comparatively of such minor importance as to render the ordinary methods of distribution of burdens and benefits between the two classes of business impracticable, it is not feasible to fix the maximum rate of compensation for carrying passengers on the basis of comparative values; and where the State Corporation Commission has, upon other considerations, fixed what it regarded as a reasonable maximum rate, the burden is on the railroad company to show that the rate so fixed is not reasonable, and on appeal from its decision this court, under the express mandate of the Constitution, and under the rule of decision adopted by the Supreme Court of the United States, must regard the action of the commission as *prima facie* just, reasonable and correct. Upon the evidence in the case at bar, this court cannot say that the rate fixed by the commission is not just, reasonable and correct.

Appeal from State Corporation Commission.

*Affirmed.*

*Hill Carter,* for the appellant.

*Samuel W. Williams,* Attorney-General, and *Richard B. Davis,* his assistant, for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

This appeal is from an order of the State Corporation Commission of June 23, 1910, establishing a maximum intrastate passenger rate for the Washington Southern Railway Company of two and one-half cents, instead of three cents, per mile for each passenger.

The contention of the company in its petition to the commission was that the former rate of two cents per mile was confiscatory.

The litigation between the State Corporation Commission and some of the more important railroads in the State, touching the subject of intrastate passenger rates is a matter of public knowledge and germane to the present inquiry. Prior to April 27, 1907, no restriction by State authority had been placed upon the right of railroads to fix their own schedule of rates for carrying passengers, and the uniform rate established by them in Virginia was three cents per mile. At that date, the commission fixed the general maximum intrastate rate at two cents per mile. Whereupon, several of the principal railroads obtained injunctions from the judge of the Circuit Court of the United States for the Eastern District of Virginia, restraining the commission from the enforcement of the rate prescribed, upon the allegation that such rate was confiscatory. The State strenuously denied the jurisdiction of a Federal judge to enjoin the action of the commission, insisting that these rate orders were the orders of a State court of competent jurisdiction, and that by express provision of section 720 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 581) the United States courts are forbidden "to stay proceedings in any court of the State, . . ." On appeal, the Supreme Court of the United States (November 30, 1908), by divided court, reversed the decree of the circuit court. See *Prentis* v. *Atlantic Coast Line Co.,*

211 U. S. 210, 53 L. Ed. 150, 29 Sup. Ct. 67. The decision of the majority, however, was considered inconclusive and unsatisfactory by both parties to the litigation, and the suit in the Circuit Court of the United States was not further prosecuted. It seems that before the opinion of the Supreme Court was announced, a compact had been entered into between the litigating railroad companies and counsel for the State that whatever the result might be, a rehearing of the matter of rates, on the merits, would be allowed the railroads by the commission. The rehearing thus agreed upon was accordingly had, and the commission settled upon a general maximum intrastate passenger rate of two and one-half cents per mile. Their action in that regard has been acquiesced in by all of the leading railroads in the State, and the injunction proceedings in the Circuit Court of the United States dismissed.

The Washington Southern Railway Company extends from Quantico (the northern terminus of the Richmond, Fredericksburg and Potomac Railroad), a distance of thirty-six miles, to the southern end of the bridge across the Potomac river at Washington. The company was originally formed by the consolidation of the Alexandria and Fredericksburg railroad with the Washington railroad. The old road has been practically relocated, rebuilt and double-tracked. As one of the witnesses describes the situation, the present road bears the same relation to the old road as the two straight lines of the dollar mark to the letter "S". Hence, the road practically carries double capitalization, and the expense of rebuilding it was materially increased by reason of the nature of the route selected for relocation and the high grade of construction. The road is located between the Potomac river, on one side, and a range of bluffs, on the other; and, beyond the immediate vicinity of the northern terminus, passes through an extremely sparsely settled territory. It was rebuilt almost exclusively for

the accommodation of interstate traffic, which composes ninety-five *per cent.* of its entire business.

The road is controlled (through stock ownership) by the Baltimore and Ohio, the Chesapeake and Ohio, the Atlantic Coast Line, the Seaboard Air Line, the Southern, and the Richmond, Fredericksburg and Potomac railroads, and forms the link between the northern and southern connections of these great systems. The intrastate traffic is a mere incident to the substantial business of the company, and is so inconsiderable and comparatively of such minor importance as to render the ordinary methods of distribution of burdens and benefits between the two classes of business impracticable.

In dealing with this aspect of the case, Prentis, chairman, (in an excellent opinion) observes: "It would not have been constructed and could not be maintained for intrastate business alone. Its strictly intrastate passenger business is only an incident to its general business and almost a negligible consideration."

It plainly appears from *data* furnished by the appellant itself that if the cost of construction, maintenance and operation of the road were apportioned on the basis of the volume of interstate and intrastate business, respectively, and five *per cent.* of the joint business allotted to intrastate traffic, it would represent an utterly insufficient capital to build, upon the cheapest possible plan, or even to maintain, any sort of a railroad between the termini of the Washington Southern. Moreover, it was admitted by counsel in argument, that a maximum rate of five cents per mile on intrastate travel alone would not yield a fair return on the capital invested upon any apportionment of values submitted to the commission. This admission of itself shows the impracticability, in the circumstances of this case, of making a reasonable return on the capital invested from intrastate traffic *solely,* the basis for the establishment of a maximum passenger rate.

Since this case was submitted, our attention has been called to the decision of Judge Sanborn in the "Minnesota rate case," *Shepard* v. *Northern Pac. Ry. Co.* (U. S. Circuit Court), 184 Fed. 765, decided April 11, 1911. It is cited as authority for the proposition, that it is beyond the competency of the State to establish a different and lesser maximum passenger rate for intrastate travel than the maximum rate allowed for interstate travel, where the effect of such action will necessarily amount to or operate as a regulation of or substantial burden upon interstate commerce. In that case it was the finding of the master (which the court confirmed) that the necessary effect of the reduction in rates in Minnesota below the basis of its lawful interstate rates deprived the company of its power to transact interstate business outside the State, and that the necessary operation and effect of the installation of the reduced rates was to materially burden interstate business and to regulate interstate commerce.

No such results can be predicated of the action of the commission under the facts of this case. There is no contention on the part of the appellant that its earnings from its general operations, even at a lesser rate than the maximum rate fixed by the commission, are not ample to meet all lawful demands upon it and to make a fair return on the capital invested and for services rendered to the public. Indeed, the record shows that in the unrestrained course of business, the company adopted a lower schedule of charges, both for intrastate and interstate passenger service, than the rate allowed by the commission. This fact alone would seem to afford a conclusive answer to appellant's pretension.

In this connection we again quote from the opinion of Judge Prentis: "The company has been perfectly free to fix its interstate rates, except so far as it may have been controlled by competition and trade conditions. Notwith-

standing this freedom with reference to interstate business, it has been doing its entire passenger business at an average of 2.47 cents per mile, and its entire passenger business in Virginia, both State and interstate, at 2.35 cents per mile. As the total revenues from its strictly intrastate passenger traffic does not exceed six *per cent.* of its total passenger traffic, the enforcement of the two-cent passenger rate for its strictly intrastate passenger business cannot very seriously affect these average rates per mile. Taking a general view of the situation, and taking notice of the fact that the standard rate upon the chief lines of railway in Virginia is a maximum of two and one-half cents per mile, . . . we think the Washington and Southern, as a part of a great railway line between the North and the South on the Atlantic coast, should be placed in the same class with the railways which have been named."

We are not unmindful of the general rules enunciated by the Supreme Court of the United States in *Smyth* v. *Ames,* 169 U. S. 466, 42 L. R. A. 819, 18 Sup. Ct. 418, and that line of decisions—namely, that the reasonableness or unreasonableness of rates prescribed by State authority for transportation of persons over a road wholly within its limits, must ordinarily be determined by the intrastate business; and, besides, that the value of the property employed, the cost of maintenance, operating expenses and the like, are proper constituents to be considered in fixing a rate which will pay a fair return to the company on its investment, and for its services to the public. Under ordinary conditions these principles are eminently wise and just, and admit of practical application and should be controlling. Take for example the Norfolk and Western, or the Southern (whose lines extend across the State), or, indeed, any other railroad company doing a substantial intrastate business. To such railways the foregoing rules are appropriate, and may well be ap-

plied. But they can in no sense be regarded as dominating factors where, as in this case, the road is built, maintained and operated essentially for interstate purposes, and where the intrastate business is incidental merely and confessedly too inconsiderable to render feasible the fixing of a reasonable maximum passenger rate on the basis of comparative values.

By Art. 12, section 156-d, of the Constitution of Virginia of 1902 (Code 1904, p. ccliv), an appeal of right lies to this court from the order of the commission.

Section 156-f (page cclv) prescribes, that "The appellate court shall have jurisdiction to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising under such appeal; provided, however, that the action of the commission appealed from shall be regarded as *prima facie* just, reasonable and correct."

The same rule of decision has been established by the decisions of the Supreme Court of the United States. *Chicago, &c., R. Co.* v. *Tompkins,* 176 U. S. 167, 44 L. Ed. 417, 20 Sup. Ct. 336; *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1, 53 L. Ed. 371, 29 Sup. Ct. 148; *Willcox* v. *Consol. Gas Co.,* 212 U. S. 19, 53 L. Ed. 382, 29 Sup. Ct. 192.

In conclusion, we are of opinion that the appellant has failed to sustain the burden cast upon it by the foregoing rule of decision, and that the order of the commission is just, reasonable and correct, and ought to be affirmed.

KEITH, P., and CARDWELL, J., dissent.

*Affirmed.*